[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This action seeking a dissolution of the marriage, equitable distribution of the parties' personal property, an assignment of the defendant's interest in the marital home, temporary and permanent alimony, and restoration of the wife's former name of Lorraine Bergamo was returned to court on January 13, 1998.
On January 29, 1998, the parties stipulated that the defendant would vacate the marital home on or before March 1, 1998. On April 2, 1998, the parties stipulated that the defendant would pay one hundred fifty ($150.00) dollars per week as temporary alimony and pay to the plaintiff one half of the cash surrender value of his John Hancock Whole Life Policy. At the time of the final hearing on December 24, 1998, the plaintiff claimed no arrearage on these sums.
The parities were married on September 8, 1962 and have resided in the Cheshire area since then on a continuous basis. During the course of this thirty-six year marriage several children were born of the union. At the present time there are no minor children issue of this marriage. CT Page 591
The plaintiff complains the marriage has broken down irretrievably. The defendant's answer admits this allegation. The wife attributes the breakdown of the marriage to the husband's infidelity.
The parties have been separated since March of 1998. The plaintiff lives alone in the marital dwelling. The defendant has established new living arrangements in conjunction with another woman. The defendant contends that the marriage had broken down irretrievably long before he established this relationship with his present live-in companion. Although the marriage was somewhat tempestuous at various times, the credible evidence would permit a finding that the defendant's temper contributed to the situation in the greater part.
Both parties are in reasonably good health, although the plaintiff is suffering from a chronic urological condition which is not disabling. The defendant works full time at Burdette Cleaner's in Waterbury, Connecticut, where he is a part owner of the corporation, a corporate officer and a part owner of the building in which the business operates and the land supporting the building. This property is in Waterbury. The stock in Burdette Cleaners is owned by two individuals. The defendant owns thirty-three and one-third (33-1/3) percent and the defendant's partner, who is a son-in-law of the plaintiff's mother, owns the balance of sixty-six and two-thirds (66-2/3) percent. These individuals have operated the business for the past twenty-two or twenty-three years. The business was originally established by the plaintiff's father. The business is a profitable one. In addition to his salary of six hundred ($600.00) dollars per week, the defendant receives insurance benefits and provides benefits to the plaintiff wife. He also receives one-third (1/3) of the rent paid by the corporation for the business premises. The other partner receives two-thirds (2/3) of the rent. The defendant has also benefitted [benefited] from profit sharing. At the present time the corporation owes him two thousand ($2,000.00) dollars in back rent and eight thousand, two hundred eighty-two ($8,282.00) dollars in deferred profit-sharing. The defendant receives additional income from his position as a diving coach for the swimming team at the Cheshire high school; this is a part time job.
The plaintiff works part time as an office manager for a local physician earning three hundred forty-eight dollars and CT Page 592 forty-four ($348.44) cents gross, and a net of two hundred seventy-six dollars and ninety-two ($276.92) cents. She is a high school graduate and has attended college for one year. She has worked in this field for a considerable period of time and it is reasonably probable that she will continue to work for the reasonably foreseeable future. The plaintiff also operates a consignment shop for bridal clothing and other formal clothing. She operates this on a part time basis and employs other employees to maintain the operation while she's working in the doctor's office.
In 1995, the plaintiff attached a Schedule C to the party's joint income tax return which showed gross receipts for the bridal business of seventeen thousand, eight hundred and twenty-nine ($17,829.00) dollars, and a net loss of five thousand, three hundred ninety-one ($5,391.00) dollars. In 1996 the comparable figures were gross receipts of fifty-one thousand, five hundred and sixty-one ($51,561.00) dollars and a net loss of eleven hundred seventy-one ($1,171.00) dollars. In 1997 the company filed separately, using Form 1065. This return showed gross receipts of seventy-two thousand, forty-one ($72,041.00) dollars and a loss of seven thousand, four hundred and six ($7,406.00) dollars. The plaintiff testified that she has received no income from this business since its inception. The defendant denied this was the case without offering any details. The plaintiff has no owned-vehicle but leases one. Her bank accounts total twenty-one hundred forty-one dollars and ninety-three ($2,141.93) cents. The cash surrender value of a life insurance policy amounts to six hundred twenty-eight dollars and two ($628.02) cents. The plaintiff has established two IRAs totaling thirty-four thousand, four hundred ninety seven dollars and eighty-four ($34,497.84) cents. In addition, the plaintiff owns a one third (1/3) interest, by Deed, in the condominium located at 355 East Mitchell Avenue and the rent derived therefrom. The value that she has assigned to this property is forty thousand ($40,000.00) dollars. The plaintiff owns this property jointly with other members of her family. The property was established as a home for her mother. The rent of approximately six hundred fifty ($650.00) dollars is being invested in a Strong Funds account with the plaintiff being a one-fourth (1/4) tenant-in-common of said account. The account is presently valued at five thousand, five hundred ($5,500.00) dollars.
The defendant owns a 1992 Nissan Maxima with a value of seven thousand ($7,000.00) dollars and has approximately twenty-four CT Page 593 hundred fifty ($2,450.00) dollars in bank accounts. The defendant is insured with a Mass. Mutual policy and with a Knights of Columbus policy. The Mass. Mutual policy has a cash value of seven thousand, two hundred ($7,200.00) dollars and the Knights of Columbus policy has a cash surrender value of twenty-five hundred ($2,500.00) dollars. In addition to this, the defendant has established a deferred compensation plan with Equitable Insurance which presently has a value of eighty-five thousand, seven hundred eighty ($85,780.00) dollars.
The defendant's financial affidavit dated December 24, 1998 assessed his total cash value of all assets, including the marital home in Cheshire, his one-third (1/3) interest in Burdette Cleaners, and the business property at 1288 Thomaston Avenue, Waterbury, Connecticut, at two hundred eighty-seven thousand, one hundred and twenty-nine dollars and thirty-three ($287,129.33) cents. In her financial affidavit dated November 23, 1998, as adjusted by the court, the plaintiff assesses her total cash value of all assets, including the marital home and her one-third (1/3) interest in the condominium at 355 East Mitchell Avenue, Cheshire, Connecticut, at one hundred thirty-nine thousand, seven hundred sixty-five dollars and twenty-nine ($139,765.29) cents.
As previously noted the plaintiff has a net income of two hundred and seventy-six dollars and ninety-two ($276.92) cents, while defendant's net as per his financial affidavit is five hundred forty-one dollars and thirty-seven ($541.37) cents. Both parties show a deficit in weekly income as compared to weekly expenses. Neither the plaintiff nor the defendant are heavily indebted. The plaintiff owes approximately seventeen thousand eight hundred twenty-six dollars and ninety-seven ($17,826.97) cents on credit cards, the bulk of which can be attributed to her business in the consignment shop. The defendant has a small obligation to AT T Universal Credit Card amounting to slightly over two thousand ($2,000.00) dollars, and a debt due to the University of New Haven for tuition for one of the children in the amount of eighteen hundred ($1,800.00) dollars.
The plaintiff and the defendant are in agreement that the court should assign the marital home to the plaintiff and assign to the defendant his one-third (1/3) interest in Burdette Cleaners, and, in addition, the realty, personal property and value of the business free and clear of any claim of the plaintiff. The parties are in general agreement that the value of CT Page 594 the marital property is approximately one hundred seventy thousand ($170,000.00) dollars subject to a thirty-nine thousand ($39,000.00) dollar mortgage. They are in disagreement, however, as to the defendant's actual income, the value of Burdette Cleaners, and the value of the business parcel at 1288 Thomaston Avenue, Waterbury, Connecticut.
A review of the defendant's financial affidavits reveals that on two occasions (1-29-98 and 7-27-98) the defendant placed a value of one hundred and three thousand ($103,000.00) dollars on the lands, buildings and business. On December 24, 1998, defendant increased his estimate to one hundred fifteen thousand, six hundred and sixty-six ($115,666.00) dollars. In his prayer for relief dated December 24, 1998, the defendant analyzed deficiencies which diminished the value of these items to one hundred thousand ($100,000.00) dollars.
Plaintiff did not employ an independent appraiser to evaluate the business property and the real estate on Thomaston Avenue but offered Exhibit A, a listing dated 5-3-96, offering the business, exclusive of realty, at two hundred sixty-nine thousand ($269,000.00) dollars, and Plaintiff's Exhibit C, a listing current until 2-26-99, offering the business only for two hundred sixty-six thousand, five hundred dollars ($266,500.00) dollars. In addition, plaintiff's Exhibit B, also dated May of 1996, lists the real estate at one hundred thirty-nine thousand ($139,000.00) dollars.
The court reviewed Burdette Cleaners' income tax returns for 1997 which reflect a value of the building and other depreciable properties at one hundred twenty-three thousand, nine hundred and thirty-seven ($123,937.00) dollars. The court finds that the most likely value of defendants one-third (1/3) interest in the business and real estate is one hundred thirty-one thousand ($131,000.00) dollars.
Defendant admitted that in the past the income of the business permitted him and his partner to draw some undocumented cash. The evidence did not suffice for the court to establish when, how much, or how often. It would be speculative for the court to factor in these phantom withdrawals into defendant's regular income.
When the parties separated the defendant took some items of personal property to his new apartment. At the hearing in CT Page 595 December he testified he was not satisfied with this non-judicial division of household furnishings and personal effects. Since the evidence before the court was insufficient to enable the court to make an allocation, the court will retain jurisdiction over the household items such as silver, china, crystal, furniture, and photographs located at 322 Lee Avenue, Cheshire, Connecticut, until such time as the parties stipulate to an agreement or schedule a further hearing.
The court finds that the defendant's conduct in establishing a relationship with another woman did indeed contribute to the ultimate breakdown of this marriage. The court finds that the marriage of the parties has broken down irretrievably and accordingly the court dissolves it. In entering the following order with reference to the assignment of property and alimony, the court has given consideration to the elements found in subsection C of § 46b-81 of the General Statutes. The court has also considered the non-economic contribution of the plaintiff wife in the acquisition, preservation and appreciation in the value of their respective estates. The court has given consideration to those elements found in § 46b-82 of the General Statutes in making an award of periodic alimony to the plaintiff. Accordingly, the court orders:
1. The husband shall pay to the wife the sum of one hundred seventy ($170.00) dollars per week as alimony. Alimony shall terminate upon the death of the husband, the death of the wife, or the wife's re-marriage;
2. The husband shall convey to the wife all of his right, title, and interest in and to the family home located at 322 Lee Avenue, Cheshire, Connecticut, to be hers absolutely and forever; the wife shall assume and pay the existing mortgage and shall indemnify, defend, and save the husband harmless from any claims thereon;
3. The husband shall retain the ownership of his one-third (1/3) interest in the business known as Burdette Cleaners doing business in Waterbury, Connecticut, and Cheshire, Connecticut. The husband shall also retain his ownership of one-third (1/3) of the parcel of commercial real estate located at 1288 Thomaston Avenue, Waterbury, Connecticut. The wife waives any claims to these items;
4. The defendant husband shall maintain and pay for health CT Page 596 insurance for the plaintiff wife through Burdette Cleaners for as long as the defendant husband remains an owner of said business. In the event the husband sells Burdette Cleaners and health insurance coverage for the plaintiff wife can no longer be provided through said dry cleaning business, defendant husband shall contribute fifty percent of the monthly premium cost required to pay for similar health insurance for the plaintiff until the wife reaches the age of sixty-five, remarries, or dies;
5. Each of the parties is the owner or beneficiary of certain pension profit sharing and/or deferred compensation plans as more particularly described in their financial affidavits of December 24, 1998. The parties shall share equally in the total sum of their accumulated pension and profit sharing plans. In order to accomplish the equal sharing, the husband shall cause a transfer to be made of sums to the wife's IRA as shall result in each of them having an equivalent amount in total of their pension and profit sharing plans.
6. The husband's life is presently insured by a policy issued by Mass. Mutual in the face amount of one hundred thousand ($100,000.00) dollars. The husband shall continue to pay for and maintain said policy of insurance on his life and shall name his wife as an irrevocable beneficiary thereof, so long as he is obligated to pay any periodic alimony to her. The husband, however, may elect to pay the wife the cash surrender value of said policy in the amount of seven thousand, one hundred seventy ($7,170.00) dollars as an alternative to maintaining said policy of insurance on his life. The husband shall have sixty days to make the selection. In the event the husband elects to terminate said coverage for the benefit of the wife, the payment of seven thousand, one hundred seventy ($7,170.00) dollars shall be made before the expiration of said sixty days.
7. The parties are presently in debt in the sum of approximately four thousand ($4,000.00) dollars for charges made on the wife's AT T Master Card. Each of the parties shall pay and be responsible for one-half of said outstanding debt. Both the husband and wife shall cause their share of said debt to be paid in continuing installments of not less than the monthly minimums required by said creditor until such time as his or her respective obligation for principle and interest shall have been paid.
8. The wife is indebted for the sum of thirteen thousand CT Page 597 ($13,000.00) dollars on credit cards used by her in connection with the business known as Ragz to Riches. The said debts were incurred by her. The wife shall be solely obligated for these debts and shall hold the husband harmless and protect him from any claim arising thereof.
9. The husband is the owner of a Nissan Maxima motor vehicle. The motor vehicle has no encumbrances and has a present market value of seven thousand ($7,000.00) dollars. He shall retain said motor vehicle as his own free of any claim of ownership by his wife.
10. The defendant husband waives any right, title, and interest in the wife's one third (1/3) interest by deed in the condominium located at 355 East Mitchell Avenue, Cheshire, Connecticut, and the rent derived there from.
11. The husband waives any right, title, and interest in the plaintiff wife's consignment shop business known as Ragz to Riches.
The plaintiff shall prepare a judgement file.
Donald T. Dorsey Judge Trial Referee